UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DANIL MAZUR, BRIAN A. LANGTON, MELIH OZALP, WILLIAM CAIN, JOHN DICK, JOSE ROSADO, SEFKET ALMOLLA, and NICHOLAS DIDOMENICO,

        Plaintiffs,

- against -

UGS HERMAN LLC d/b/a UGS HERMAN INTEGRATION SERVICES,

        Defendant.

Case 1:23-cv-08839

Judge Mary Kay Vyskocil

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS THE COMPLAINT
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

Kelly M. Cardin, Esq.
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, PC
799 Lexington Avenue, 17th Floor
New York, New York 10022
212.492.2500

*Attorneys for Defendant UGS Herman LLC*

**TABLE OF CONTENTS**

                                                                       **Page**

PRELIMINARY STATEMENT ................................................................................................. 1

THE COMPLAINT ..................................................................................................................... 2

ARGUMENT ................................................................................................................................ 3

I. Standard of Review ................................................................................................................... 3

      A.  Standard For Evaluation of A Motion to Dismiss ............................................................. 3

II. In Light of the CBA, Plaintiffs Have No Viable Claim Against UGS Herman ......................... 4

      A.  Plaintiffs Waived Any Claim to Weekly Pay.. ........................................................... 4

      B.  Section 191 Was Not Intended to Protect Unionized Workers .............................. 6

III. Even if Plaintiffs Could Overcome the CBA Hurdles, This Case Should Be Dismissed Because Plaintiffs Have Failed to State a Claim. ................................................... 6

      A.  Article 6 and Relevant legal Landscape ................................................................. 7

      B.  *Vega* Was Erroneously Decided.. .......................................................................... 8

      C.  Plaintiffs' Claim Fails Because There is No Private Right of Action for Violations of NYLL Section 191 ............................................................................ 9

            1.  There is No Express Private Right of Action for An Untimely Payment ........................................................................................................ 9

            2.  Section 191 Does Not Contain an Implied Right of Action .......................... 11

CONCLUSION ............................................................................................................................ 13

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Allis-Chalmers Corp. v. Lueck*,
    471 U.S. 202, 105 S. Ct. 1904, 85 L. Ed. 2d 206 (1985)............................................................3

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................................................3, 4

*Assoko v. City of New York*,
    439 F. Supp. 2d 728 (S.D.N.Y. Mar. 26, 2008)........................................................................3

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................................................3

*Bhatnagar v. New Sch.*,
    2023 U.S. App. LEXIS 15254 (2d Cir. 2023) ........................................................................11

*Certain Underwriters at Lloyd's v. Plasmanet Inc.*,
    2002 U.S. Dist. LEXIS 14190 (S.D.N.Y. July 31, 2002) .......................................................12

*Colvin v. State Univ. College at Farmingdale*,
    2014 U.S. Dist. LEXIS 858678 (E.D.N.Y. June 19, 2014) ....................................................11

*Georgiou v. Harmon Stores, Inc.*,
    2022 U.S. Dist. Lexis 234643 (E.D.N.Y. Jan. 5, 2023)..........................................................13

*Harris v. Old Navy, LLC*,
    2022 U.S. Dist. LEXIS 206664 (S.D.N.Y. Nov. 15, 2022).....................................................12

*Hussain v. Pak. Int'l Airlines Corp.*,
    No. 11-CV-932, 2012 U.S. Dist. LEXIS 152254 (E.D.N.Y. Oct. 23, 2012)............................7

*Martin v. N.Y. State Dep't of Mental Hygiene*,
    588 F.2d 371 (2d Cir. 1978)......................................................................................................3

*Patrolmen's Benevolent Asso. V. Long Island R. Co.*,
    1987 U.S. Dist. LEXIS 14834 (E.D.N.Y. June 2, 1987) ..........................................................5

*Rutland Railway v. Brotherhood of Locomotive Engineers*,
    307 F.2d 21 (2d Cir. 1962), *cert. denied*, 372 U.S. 954 (1963).................................................5

*Simel v. JP Morgan Chase*,
    2007 U.S Dist. LEXIS 18693 (S.D.N.Y. Mar. 19, 2007) .........................................................5

*Wright v. Brae Burn Country Club, Inc.*,
   2009 U.S. Dist. LEXIS 26492 (S.D.N.Y. Mar. 20, 2009) ........................................................4

**State Cases**

*Hunter v. Planned Bldg. Servs., Inc.*,
   2018 N.Y. Slip Op. 31541[U](Trial Order) (N.Y. Sup. Ct. Queens Cnty. June
   11, 2018) ..................................................................................................................................7

*IKEA U.S. v. Indus. Bd. of Appeals*,
   241 A.D.2d 454 (2d Dep't 1997) .......................................................................................7, 10

*People v. Vetri*,
   309 N.Y. 401 (1955) ................................................................................................................6

*Phillips v Max Finkelstein, Inc.*,
   115 N.Y.S.3d 866 (N.Y. Sup. Ct. Suffolk Cnty. 2019) ...........................................................7

*Sheehy v Big Flats Community Day*,
   73 N.Y.2d 629 (1989) .................................................................................................11, 12, 13

*Vega v. CM and Associates Construction Management, LLC*,
   107 N.Y.S.3d 286 (1st Dep't 2019) ..............................................................................1, 7, 8, 9

**Federal Statutes**

Labor Management Relations Act ...................................................................................................3

**State Statutes**

Article 6 .......................................................................................................................................7, 11

Labor Law § 198 ................................................................................................................... *passim*

N.Y. Lab. Law § 190(4) ..................................................................................................................7

N.Y. Lab. Law §§ 197 and 218 .....................................................................................................12

N.Y. Lab. Law § 198(1-a) .................................................................................................7, 8, 9, 10

New York Labor Law ("NYLL") ............................................................................................3, 5, 7

New York Labor Law, § 190 et seq. Article 6 ...............................................................................7

New York Labor Law § 191 ................................................................................................ *passim*

**Rules**

Fed. R. Civ. P. 12(b)(6)................................................................................................................1, 3

**Other Authorities**

Merriam-Webster's Collegiate Dictionary 1364 [11th ed 2012]......................................................9

Defendant UGS Herman, LLC ("UGS Herman"), by and through its attorneys Ogletree, Deakins, Nash, Smoak & Stewart, P.C., hereby respectfully submits this memorandum of law in support of its motion to dismiss the Complaint of Plaintiffs Danil Mazur, Brian A. Langton, Melih Ozalp, William Cain, John Dick, Jose Rosado, Sefket Almolla, and Nicholas DiDomenico (collectively "Plaintiffs") pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

In their single count Complaint, Plaintiffs, eight current and/or former UGS Herman employees, allege they were manual workers and should have been paid on a weekly, rather than bi-weekly, basis pursuant to New York Labor Law ("NYLL") § 191. Plaintiffs concede that they were paid; their claim is merely that they were paid a week late.

Plaintiffs' claim fails as a matter of law because the terms and conditions of their employment were governed by a collective bargaining agreement ("CBA"), which contemplated bi-weekly payments. That is, pursuant to the bargained-for terms of the CBA, UGS Herman was obligated to pay Plaintiffs bi-weekly. Because pay frequency was a term contemplated by the CBA, Plaintiffs cannot assert their pay frequency claim in this forum, but rather the claim is subject to the grievance process described in the CBA. Their claim must be dismissed because (1) Plaintiffs waived any claim to weekly pay under the CBA, and (2) the pay frequency provisions of § 191 were not intended to apply to unionized employees, like Plaintiffs.

Yet, even if the CBA did not preclude their claims – and it does – Plaintiffs still cannot state a claim under § 191. Here, Plaintiffs admit that they were paid all earnings they were due, and, accordingly they cannot collect liquidated damages. While Plaintiffs will likely rely on the First Department's decision in *Vega v. CM & Assoc. Constr. Mgmt., LLC* in an effort to state a claim, UGS Herman submits that, as discussed further herein, *Vega* was wrongly decided and that

1

the Court of Appeals is likely to find there is no private right of action for a pay frequency claim if and when the Court of Appeals reviews this issue. For these reasons, and those set forth below, Plaintiffs' Complaint should be dismissed with prejudice.

## THE COMPLAINT

UGS Herman employed Plaintiffs as technicians during the relevant time period. (Compl. ¶¶ 1, 8-23.)[1] Plaintiffs allege that UGS Herman paid them on a bi-weekly basis. (*Id.* ¶ 38.) Plaintiffs concede that UGS Herman paid them all earnings owed. (*Id.* ¶¶ 38-47.) Their claim is merely that they were paid late (i.e., bi-weekly instead of weekly). (*Id.*)

Plaintiffs were members of a union, and a collective bargaining agreement (2017-2020 and, as amended, 2020-2023) between UGS Herman, LLC and Communication Workers of America, AFL-CIO Local 1106 (the "CBA") governed the terms of their pay. (*See* Exhibit 1, pp. 5-61). The CBA contemplates bi-weekly payments and contains many references to bi-weekly deductions (e.g., "the Company will deduct bi-weekly from such employee's wages the amount specified in such request" (Exhibit 1, pp. 10; 39); "Payroll deductions will be made in bi-weekly pay periods for properly executed deduction authorization forms…" (Exhibit 1, pp. 10; 39); and "the Company agrees to offer bargaining unit employees the following bi-weekly employee contribution amounts for each coverage tier listed in the tables below," followed by a table listing out "bi-weekly employee contribution" amounts for health insurance) (Exhibit 1, pp. 55-56).

---

[1] Given the standard of review in a motion to dismiss, Defendant does not affirmatively contest the allegations in the Complaint in this application. Defendant does not concede, however, that the allegations in the Complaint are true. Defendant denies, and will vigorously contest, Plaintiffs' allegations.

Plaintiffs filed their Complaint on August 15, 2023, alleging a single count for failure to pay timely wages in violation of the New York Labor Law ("NYLL"). (*See* ECF 1.)[2] They seek to recover liquidated damages for each week that UGS Herman allegedly paid them late during their employment. (Compl. ¶¶ 48-54).

## ARGUMENT

### I. Standard of Review

#### A. Standard For Evaluation Of A Motion To Dismiss

A complaint should be dismissed where, as here, the factual allegations fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). While factual allegations in the complaint generally are deemed true and afforded favorable inferences, it is well-settled that "conclusory allegations, merely tracking statutory language, are insufficient to survive a motion to dismiss." *Assoko v. City of New York*, 439 F. Supp. 2d 728, 741 (S.D.N.Y. Mar. 26, 2008); *see also Martin v. N.Y. State Dep't of Mental Hygiene*, 588 F.2d 371 (2d Cir. 1978). A plaintiff's factual allegations "must be enough to raise a right of relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted). Where a plaintiff has not "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.* at 570; *see also Ashcroft v. Iqbal,* 556 U.S. 662, 684 (2009) (applying *Twombly* to "all civil actions").

---

[2] Though Plaintiffs filed their claim alleging a violation of the New York Labor Law, this matter is still properly before this Court because when "resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract[,]" the claim is preempted pursuant to the Labor Management Relations Act ("LMRA"). *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211, 105 S. Ct. 1904, 85 L. Ed. 2d 206 (1985). This is true even where the claim at issue is premised on state law, and "[q]uestions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law" pursuant to the LMRA. *Id*.

As the *Iqbal* court explained, the plausibility standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal,* 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citing *Twombly,* 550 U.S. at 557).

**II.       In Light of the CBA, Plaintiffs Have No Viable Claim Against UGS Herman.**

Plaintiffs were all members of the Communication Workers of America, AFL-CIO Local 1106. The terms and conditions of their employment were governed by the applicable CBA, which contemplates bi-weekly pay. As such, their claim must be dismissed because (1) Plaintiffs waived any claim to weekly pay under the CBA, and (2) the pay frequency provisions of § 191 were not intended to apply to unionized employees, like Plaintiffs.

**A.       Plaintiffs Waived Any Claim to Weekly Pay.**

Even if their claim was not preempted – and it is – Plaintiffs have waived their claim to weekly pay pursuant to the CBA. "Where there is no express indication of the legislative intent, waiver or modification of such a statutory benefit will be permissible to the extent that it can be ascertained that the legislative purpose is not contravened." *Wright v. Brae Burn Country Club, Inc.,* 2009 U.S. Dist. LEXIS 26492, at *11 (S.D.N.Y. Mar. 20, 2009) (quoting *Am. Broadcasting Cos. v Roberts*, 61 NY2d 244, 249 (1984)). "There is no express restriction on the private settlement or waiver of wage and hour claims under New York law." *Id*. (citing N.Y. Lab. Law § 595 (McKinney 2002) (restricting waiver of rights to unemployment insurance); N.Y. Workers' Comp. Law § 32 (McKinney 2005) (restricting waiver of rights to workers' compensation)); *see*

*also Simel v. JP Morgan Chase*, 2007 U.S Dist. LEXIS 18693, at *4 (S.D.N.Y. Mar. 19, 2007) (discussing New York law on waiver of claims and holding NYLL wage claims waived).

Here, there is no express indication of legislative intent regarding modification of pay frequency, and there is no indication that the legislature intended to prevent modification of the pay frequency terms as they relate to Plaintiffs. The Plaintiffs were represented by the Union in negotiations with Defendant concerning bi-weekly payment of wages and the plain language of the CBA is clear. In so agreeing to the terms, Plaintiffs waived any right to weekly pay.

Even if Plaintiffs were under the mistaken belief that they agreed to weekly wage payments under the terms of the CBA, they waived any right to weekly wage payments by accepting bi-weekly wage payments for several years without filing a grievance. The CBA's grievance procedure states: "All grievances shall be presented to the other party as soon as practicable after the occurrence upon which the same is based." (Exhibit 1, p. 8; 37). As Plaintiffs have knowingly and willingly accepted wage payments on a bi-weekly basis for several years without once filing a grievance, the bi-weekly payment of wages is a binding past practice between the parties. *See, e.g., Patrolmen's Benevolent Asso. V. Long Island R. Co.*, 1987 U.S. Dist. LEXIS 14834, at *6 (E.D.N.Y. June 2, 1987) ("past practices can become part of a collective bargaining agreement if the conduct has become well-established over the years and the union has failed to object"). "In such instances, the courts have held that the past practice[] constitute the *status quo* and [is] equivalent to an express provision in the collective bargaining agreement." *Id*., at *6-7 (citing *Air Cargo v. Local 851, International Brotherhood of Teamsters,* 733 F.2d 241, 246 (2d Cir. 1984); *Rutland Railway v. Brotherhood of Locomotive Engineers*, 307 F.2d 21, 36 (2d Cir. 1962), *cert. denied*, 372 U.S. 954 (1963).

Plaintiffs' anticipated argument that the CBA does not waive their alleged right to weekly pay because of passing references to "weekly dues rate" and "one payroll week" is defeated by this binding past practice. Plaintiffs voluntarily accepted wages on a bi-weekly basis for the entire period in question (2019-2023) and for years prior without filing a grievance. As such, even if the CBA did not expressly contemplate bi-weekly wage payments (which it does), and even if the CBA was ambiguous (which it is not), Plaintiffs have knowingly and voluntarily assented to the bi-weekly payment of wages over the past several years without objection, creating a binding past practice of bi-weekly wage payments between the parties such that Plaintiffs have waived any alleged right to weekly pay. Their claim must be dismissed accordingly.

### B. Section 191 Was Not Intended to Protect Unionized Workers.

It also bears noting that Plaintiffs are not the types of employees that § 191 was intended to protect, and they cannot state a claim under that statute. Indeed, the concerns that § 191 was designed to address – securing prompt payment of wages for individuals who are dependent upon their weekly earnings for the support of themselves and their families – are not implicated here, where Plaintiffs' interests were protected by a union. *See People v. Vetri*, 309 N.Y. 401, 405 (1955). Plaintiffs all are or were members of the Union, which bargained with Defendant over each of the terms and conditions of Plaintiffs' employment. The intent of § 191 was to protect workers who could not otherwise protect themselves. That is not the case here, where the Union bargained for bi-weekly payment of wages, and as such Plaintiffs have no claim under § 191.

### III. Even if Plaintiffs Could Overcome the CBA Hurdles, This Case Should Be Dismissed Because Plaintiffs Have Failed to State a Claim.

While Plaintiffs attempt to assert a claim under *Vega v. CM & Assoc. Constr. Mgmt., LLC*, that case was wrongly decided, and is unlikely to stand if and when the Court of Appeals Reviews the issue.

6

### A. Article 6 and Relevant Legal Landscape.

To provide context, Article 6 of the New York Labor Law, § 190 et seq. ("Article 6") governs the payment of wages, and § 191 governs pay frequency requirements for certain categories of employees. With respect to "manual workers," it provides:

> [a] manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned . . . . .

A "manual worker" is defined as "a mechanic, workingman or laborer." N.Y. Lab. Law § 190(4).

Section 191 does not contain a private right of action. However, § 197 permits the New York State Department of Labor Commissioner to assess a penalty of $500 for a pay frequency violation, and § 218 permits the Commissioner to assess penalties, after an administrative proceeding, in an amount between $1,000-$3,000. For decades, New York state and federal courts consistently (and correctly) held that a mere pay frequency violation, without any actual underpayment of the wages, did not trigger a private right to damages under Article 6.[3] Rather, it was understood that any penalty for untimely wages was to be assessed solely by the Commissioner pursuant to §§ 197 or 218.

*Vega v. CM & Assoc. Constr. Mgmt., LLC*, upended this scheme in September 2019. 175 A.D.3d at 1145-46, 107 N.Y.S.3d at 288. In *Vega*, the plaintiff sought to collect liquidated damages for a violation of the manual worker pay frequency requirement in § 191(a), arguing that she should be able to assert a private cause of action pursuant to N.Y. Lab. Law § 198(1-a). *Id.* That section

---

[3] *See Phillips v Max Finkelstein, Inc.*, 115 N.Y.S.3d 866, 869 (N.Y. Sup. Ct. Suffolk Cnty. 2019); *Hunter v. Planned Bldg. Servs., Inc.*, 2018 N.Y. Slip Op. 31541[U](Trial Order) (N.Y. Sup. Ct. Queens Cnty. June 11, 2018) (mere frequency of pay violation, without an actual underpayment, does not trigger the damages provision of Section 198); *IKEA U.S. v. Indus. Bd. of Appeals*, 241 A.D.2d 454, 455 (2d Dep't 1997) (NYSDOL Commissioner assessed only a fine for violation of Section 191; there was no finding that the wages paid bi-weekly was an "underpayment" and liquidated damages were not assessed); *Hussain v. Pak. Int'l Airlines Corp.*, No. 11-CV-932, 2012 U.S. Dist. LEXIS 152254, at *8 (E.D.N.Y. Oct. 23, 2012) (dismissing frequency of pay claim because "[the New York Labor Law] contains no provision for private recovery for violations of its provisions regarding frequency of pay . . . .").

provides an employee may recover damages for an "underpayment" of wages, plus attorneys' fees and "an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due[.]" N.Y. Lab. Law § 198(1-a).

In finding the plaintiff could state a claim, the First Department – relying on little more than Merriam-Webster – construed late wages as an "underpayment," to put it within the purview of § 198(1-a) and concluded that plaintiff could state a cause of action for an alleged violation of § 191. *Vega*, 175 A.D.3d at 1146, 107 N.Y.S.3d at 288 (holding that "Labor Law § 198 (1-a) expressly provides a private right of action for a violation of Labor Law § 191"). In reaching this decision, the First Department does not to appear to have considered the long line of authority contradicting its holding.[4]

*Vega* also noted that an employer can raise payment as a defense to the underpayment claim, meaning that if the employer can establish that the late wages were paid (albeit untimely), a plaintiff will not recover an award of damages for the "underpayment." *Vega*, 175 A.D.3d at 1145, 107 N.Y.S.3d at 288 ("The employer may assert an affirmative defense of payment if there are no wages for the "employee to recover" (Labor Law § 198 [1-a]).").

### B. *Vega* Was Erroneously Decided.

Defendant anticipates that, in support of their argument for a private right of action under § 191, Plaintiffs will rely on *Vega v. CM and Associates Construction Management, LLC*, 107 N.Y.S.3d 286 (1st Dep't 2019). As set forth below, *Vega* was erroneously decided. Indeed, *Vega* cut against decades of precedent in New York which held the opposite – i.e., that § 191 does not create a private right of action affording damages absent an actual underpayment of wages. In so doing, *Vega* interpreted underpayment to include payments that were "untimely", based purely on

---

[4] *See supra* note 2.

a dictionary definition that makes no mention of timing.[5] Section 198(1-a) itself limits private rights of action to instances of "underpayments." As explained above, damages are limited to circumstances where the employee did not receive their complete earnings, meaning that a violation for § 191 without an underpayment does not trigger damages under § 198. The legislature could have enacted a broader scheme if it intended to create a private right of action for technical violations of § 191 – or used the phrase "untimely payment" in § 198(1-a) – but it did not. Rather, it chose to limit private actions to "underpayments", as distinct from mere technical violations of the statute.

    **C.    Plaintiffs' Claim Fails Because There is No Private Right of Action for Violations of NYLL Section 191.**

Plaintiffs' sole count fails because they cannot state an express or implied private right of action for violations of § 191.

    **1.    There is No Express Private Right of Action for An Untimely Payment.**

Contrary to the holding in *Vega*, § 191 does not create a private right of action absent an actual underpayment of wages. Significantly, § 198(1-a) limits private rights of action to instances of "underpayments." Under NYLL § 198, an employee may recover damages for an underpayment of wages, plus attorneys' fees and liquidated damages:

> In any action instituted in the courts upon a wage claim by an employee or the commissioner in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as

---

[5] Underpay is defined as "to pay less than what is normal or required." See Merriam-Webster's Collegiate Dictionary 1364 [11th ed 2012]; *Vega*, LLC, 175 A.D.3d 114, 107 N.Y.S.3d 286. Nowhere in the dictionary definition of "underpay" cited by *Vega* is there a mention of or reference to the "timing" of the alleged payment.

>liquidated damages equal to one hundred percent of the total amount of the wages found to be due . . .

NYLL § 198(1-a).

Consistent with the plain language of § 198, New York state and federal courts have held that damages are limited to circumstances in which the employee did not receive their complete wages. In other words, a mere frequency of pay violation, without any unpaid wages, does not trigger § 198. A decades-long line of authority reaches this same conclusion. *See, e.g., supra* fn 2.

The Appellate Division, Second Department, and courts within the second judicial district have likewise held that a plaintiff cannot state a claim for frequency of pay violations absent a claim for unpaid wages. In *IKEA U.S. v. Indus. Bd. of Appeals*, 241 A.D.2d 454, 455 (2d Dep't 1997), the Appellate Division, Second Department upheld the assessment of a fine by the Commissioner of Labor against an employer who violated the frequency of pay statute by paying alleged manual workers bi-weekly instead of weekly. In issuing a fine, rather than liquidated damages, the Second Department found that the Commissioner's determination was "supported by substantial evidence" because the failure to timely pay wages was not an "underpayment" under the law. *Id.* The Court in *Grant v. Global Aircraft Dispatch, Inc.*, found *IKEA* persuasive and similarly held that an alleged untimely payment on a bi-weekly rather than weekly basis did not constitute an underpayment. No. 720074/2019 (Sup. Ct. Queens Cnty. Apr. 20, 2021) (Dkt. 52). In *Grant*, like here, the plaintiff did not seek recovery of nonpayment of wages, and thus, the Court correctly held that plaintiff did not have a private right of action under either §191 or 198(1-a). Here, the Court is bound to follow *IKEA*, and should adopt the sound reasoning of *Grant*.

The statute's legislative history compels the same conclusion. Section 198(1-a) was enacted to create "stronger sanctions against an employer for willful failure to pay wages or to pay the minimum wage." Bill Jacket, L. 1967, ch. 210, at 1. Thus, the legislature's focus under § 198(1-

10

a) was the amount of the wage payments, not the timing of payment. The amendments to § 198 similarly emphasized a failure to pay employees their correct wages. For example, in 2010, the amendment sponsor's memorandum stated, "a large number of employees are earning less than minimum wage and others are being paid less than their correct wage." Bill Jacket, L. 2010, ch. 564, at 4. Because Plaintiffs concede they were paid all wages due, no private right of action exists, and the Complaint must be dismissed.

### 2. Section 191 Does Not Contain an Implied Right of Action.

Similarly, Plaintiffs' claim fails because the legislative intent of § 191 does not favor an implied private right of action. Private rights of action under Article 6 are not to be presumed and can be found "only if a legislative intent to create such a right of action is fairly implied in the statutory provisions and their legislative history." *Bhatnagar v. New Sch.,* 2023 U.S. App. LEXIS 15254, at *11 (2d Cir. 2023) (quoting *Ortiz v. Ciox Health LLC,* 37 N.Y.3d 353, 360 (2021)).

To determine that no such implied right of action exists with respect to § 198-b, the three-factor *Sheehy* test must be applied. The test queries: "(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme." *Id.* (citing *Sheehy v Big Flats Community Day*, 73 N.Y.2d 629, 633 (1989)). No private right of action is permitted where, as here, "[t]he legislature specifically considered and expressly provided for enforcement mechanisms in the statute itself." *See Colvin v. State Univ. College at Farmingdale,* 2014 U.S. Dist. LEXIS 858678, at *84 (E.D.N.Y. June 19, 2014) (quotations and citation omitted).

Plaintiffs will not be able to satisfy the *Sheehy* test. As to the first factor, the "class for whose particular benefit the statute was enacted" – as stated explicitly in the 1967 and 2010 Bill Jackets – is workers who have been paid less than the minimum wage and/or less than their correct

11

wages. Nothing in the statute or its legislative history would indicate that the statute was enacted for the "particular benefit" of workers who were paid in full but biweekly, like Plaintiffs. As to the second factor, the legislature certainly did not intend the statute to provide a remedy to allow workers to obtain a windfall and collect liquidated damages on wages already paid. Again, it is clear from the language of the statute itself that private rights of action are limited to instances of "underpayments" (i.e., wages that were not paid at all or paid less than what was agreed), which is what the legislature intended. There is no doubt a private right of action would not promote the legislative purpose, particularly here, where penalties for such technical violations already exist.

Nor can Plaintiffs satisfy the third, and most important, factor of the *Sheehy* test because a "private right of action should not be judicially sanctioned if it is incompatible with the enforcement mechanism chosen by the legislature or discordant with some other aspect of the overall statutory scheme" *Certain Underwriters at Lloyd's v. Plasmanet Inc.,* 2002 U.S. Dist. LEXIS 14190, at *9 (S.D.N.Y. July 31, 2002) (citing *Bauer v. Mellon Mortgage Co.,* 680 N.Y.S.2d 397, 400 (1998)). By its terms, the legislature expressly authorized the Commissioner to issue civil penalties pursuant to N.Y. Lab. Law §§ 197 and 218 for pay frequency violations. Since its inception, (and previous iterations) nearly 130 years ago, the statute has established this plenary enforcement mechanism. Because the statutory scheme expressly provides for a penalty to be assessed solely by the Commissioner, "indicating that the legislature considered how best to effectuate its intent and provided the avenues for relief it deemed warranted", this Court cannot plausibly find the existence of another mechanism for enforcement via a private right of action. *Harris v. Old Navy, LLC,* 2022 U.S. Dist. LEXIS 206664, at *23-24 (S.D.N.Y. Nov. 15, 2022) (citing *Cruz v. TD Bank, N.A.*, 22 N.Y.3d 61, 70, 979 N.Y.S.2d 257, 262 (2013)). Plaintiffs cannot

satisfy the *Sheehy* test. The utter absence of a private right of action thus provides a further, independent basis for dismissal here.

Indeed, a recent decision, *Georgiou v. Harmon Stores, Inc.*, 2022 U.S. Dist. Lexis 234643 (E.D.N.Y. Jan. 5, 2023), expressly abrogated *Vega's* holding that an implied private right of action exists under New York Labor Law § 191. In so finding, the court in *Georgiou* held that

> I have no trouble finding that *Vega's* alternative holding that there is an implied right of action has been abrogated by *Konkur*. *Vega* simply assumed that if a plaintiff is a member of the class that the legislature intended to protect, and private enforcement would further the purposes of the statute - the first two requirements for implying a private right of action - it follows a fortiori that private enforcement would not be inconsistent with the statute. As *Konkur* shows, however, that assumption is wrong. *Konkur* made it clear that where the Legislature has already provided an enforcement mechanism, there is a strong likelihood that judicial creation of an additional remedy (private enforcement) may be inconsistent with the Legislature's intent.

*Georgiou*, 2022 U.S. Dist. LEXIS 234643, at *10-11. As such, this Court should find there is no implied private right of action and dismiss Plaintiffs' Complaint accordingly.

## CONCLUSION

For the foregoing reasons, UGS Herman respectfully requests that the Court dismiss Plaintiffs' Complaint with prejudice, and grant it such other and further relief as the Court deems appropriate, including its fees and costs.

Dated:   New York, New York
         December 11, 2023

OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.

By: */s/ Kelly M. Cardin*
    Kelly M. Cardin
599 Lexington Avenue, 17th Floor
New York, New York 10022
212.492.2500

*Attorneys for Defendant UGS Herman LLC*

13